United States District Court
Southern District of Texas
**ENTERED**
March 14, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| COLUMBIA LLOYDS INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-005 |
| | § | |
| LIBERTY INSURANCE | § | |
| UNDERWRITERS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

This lawsuit arises out of an insurance coverage dispute between Plaintiffs Columbia Lloyds Insurance Company ("Columbia Lloyds"), MDOW Insurance Company ("MDOW"), John Dunn and Milby Dunn, II (collectively the "Dunns"),[1] and Defendant Liberty Insurance Underwriters, Inc. ("Liberty").   Before the court are Insured Plaintiffs' Motion for Partial Summary Judgment (Dkt. 21) and Liberty's Motion for Summary Judgment (Dkt. 20).   All dispositive pretrial motions in this case were referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   Having considered the motions and applicable law, the court RECOMMENDS that Insured Plaintiffs' Partial Motion for Summary Judgment (Dkt. 21) be GRANTED, and Liberty's Motion for Summary Judgment (Dkt. 20) be DENIED.

---

[1] As a collective group, the Plaintiffs will be referred to as "Insured Plaintiffs."

## I. BACKGROUND

Columbia Lloyds is a Texas-based insurance company. MDOW is also a Texas-based insurance company, and a subsidiary of Columbia Lloyds. The Dunns are Columbia Lloyds' shareholders and members of its Board of Directors.

FarmAssure, LLC ("FarmAssure") is a managing agent engaged in the business of selling farm and auto insurance in the state of Oklahoma. Jeffrey Mann ("Mann") has been the President and Chief Executive Officer of FarmAssure since its formation. Starting in late 2010, MDOW retained FarmAssure as the exclusive managing general agent to sell farm insurance for MDOW in Oklahoma. Impressed with Mann's business acumen, Columbia Lloyds named Mann its President and Chief Executive Officer in the spring of 2011 with the express understanding that Mann would continue to hold the same positions at FarmAssure.

In November 2015, Milby Dunn, II completed an insurance application to renew Columbia Lloyds and MDOW's Directors and Officers insurance policy (the "Application"). In the Application, Columbia Lloyds was asked "Has the Applicant experienced changes to its Board of Directors or to its Key Executives over the past 12 months?" Columbia Lloyds indicated "No." The parties agree this was a misstatement or untruth. The correct answer was "Yes," as Columbia Lloyds had experienced a change in its key leadership in the past 12 months. Columbia Lloyds had terminated Mann, its President and Chief Executive Officer, two months before completing the Application. Additionally, Sam Bana, a former FarmAssure executive, had been hired as Columbia Lloyds' Chief Operating Officer roughly a month before the Application had been completed.

In March 2016, Liberty issued Private Advantage Policy number PAHOAA93KE001 to Columbia Lloyds for the policy period March 8, 2016 to March 8, 2017 (the "Policy"). The

Policy includes Directors and Officers Liability and Company Liability coverage with a maximum aggregate limit of liability of $2,000,000. The Policy's Directors and Officers Liability provision provides coverage for "any **Claim** first made against the **Insured Persons** during the **Policy Period** … for any **Wrongful Acts** by the **Insured Persons** taking place prior to the end of the **Policy Period**." Similarly, the Policy's Company Liability provision, as relevant here, provides coverage for "any Claim first made against the **Company** during the Policy Period … for any **Wrongful Acts** by the **Company** taking place prior to the end of the **Policy Period**." The Policy also provides the following definitions:

> **Company** means, collectively, [Columbia Lloyds and MDOW].

> **Insured** … means…the **Insured Persons**, and … solely with respect to the Insuring Clauses B, C, D, the **Company**.

> **Insured Persons,** … means … any one or more persons who were, now are or shall be duly elected or appointed directors … [or] officers … of the **Company**.

> **Parent Company** means, [Columbia Lloyds].

> **Claim** means … a civil proceeding … [or] arbitration proceeding against any Insured.

> **Wrongful Act** means … any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons** in their capacity as such, or … by the **Company** ….

The Policy contains an important exclusion, which provides that "in the event there is any misstatement or untruth in the answers to the questions contained herein, Insurer have [sic] the right to exclude from coverage any claim based upon, arising out of or in connection with such misstatement or untruth." ("Application Exclusion").[2]

---

[2] The Application Exclusion language is contained within the Application attached to the Policy. Importantly, the Policy is defined as including "collectively, the Declarations, the Application, this policy form … and any endorsements hereto."

In April 2016, the Dunns sued FarmAssure in Texas state court in a case styled *John Dunn and Milby Dunn, II v. FarmAssure, LLC,* No. 2016-13393 (295th Dist. Ct., Harris County, Tex. Apr. 11, 2016). ("Harris County Lawsuit").  The Dunns brought suit in their capacity as minority shareholders of FarmAssure, requesting, in part, an inspection of FarmAssure's corporate books and records, as well an accounting.  FarmAssure asserted a counterclaim against the Dunns in their capacity as officers or directors of Columbia Lloyds for "perpetrat[ing] a campaign of disparagement, fraud and other tortious conduct aimed at destroying FarmAssure's reputation in the insurance industry …."  The counterclaim alleged the following causes of action: (1) business disparagement; (2) defamation; (3) usurpation of corporate opportunities and breach of the duties of loyalty, good faith, and fair dealing; (4) conspiracy to tortiously interfere with FarmAssure's customer contracts; (5) conspiracy to tortiously interfere with Spinnaker contract; (6) conspiracy to tortiously interfere with prospective business relations; (7) conspiracy to defraud FarmAssure; and (8) unjust enrichment.

In addition to bringing the counterclaim against the Dunns in the Harris County Lawsuit, FarmAssure initiated an arbitration proceeding against Columbia Lloyds and MDOW styled *FarmAssure, LLC v. MDOW Insurance Company and Columbia Lloyds Insurance Company*, No. 01-16-00001-1237, American Arbitration Association ("AAA Arbitration").  In the AAA Arbitration, FarmAssure complained that Columbia Lloyds and MDOW engaged in an "active effort to disparage FarmAssure among its customers, agents and reinsurance partners" and "misappropriate[ed] FarmAssure's methods, ideas, and processes for their own gain."  FarmAssure asserted the following causes of action against Columbia Lloyds and MDOW: (1) tortious interference with FarmAssure's customer and agent contracts; (2) tortious interference

4

with Spinnaker contract; (3) tortious interference with prospective business relations; (4) business disparagement; (5) breach of Restated Managing General Agency Agreement between Columbia Lloyds, MDOW, and FarmAssure; (6) breach of Cooperation Agreement between Columbia Lloyds, MDOW, and FarmAssure; (7) tortious interference by Columbia Lloyds with the Restated Managing General Agency Agreement; (8) fraud; (9) theft of trade secrets; and (10) unjust enrichment.

In September 2016, as the Harris County Lawsuit and AAA Arbitration were ongoing, Insured Plaintiffs gave Liberty notice of both underlying matters and sought coverage pursuant to the Policy.  Liberty declined to defend Insured Plaintiffs, claiming that the misstatement or untruth on the Application concerning changes to Columbia Lloyds' leadership triggered the Application Exclusion.

On January 6, 2017, Insured Plaintiffs filed the instant suit, alleging breach of contract, violation of §542.060 of the Texas Insurance Code, and seeking declaratory relief.  Insured Plaintiffs now move for partial summary judgment, seeking a declaration that Liberty has a duty to defend Insured Plaintiffs in the Harris County Lawsuit and AAA Arbitration, and a declaration that Liberty's denial of coverage breached the Policy.  Liberty also moves for summary judgment, seeking a declaration that due to the Application Exclusion, it has no duty to defend or indemnify the Harris County Lawsuit or AAA Arbitration.   Liberty additionally seeks summary judgment against Insured Plaintiffs' claim for statutory damages under the Texas Insurance Code.

## II. APPLICABLE LAW

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   "The movant bears the burden of identifying those portions of the claim it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).   "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).   "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56 burden, the nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).   "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.' " *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).   In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

"On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving

6

party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citation omitted).

**B.      DUTY TO DEFEND**

In this diversity case, the substantive law of Texas controls the determination of a duty to defend. *Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003). Under Texas law, courts follow the "eight corners rule" to determine whether an insurer has a duty to defend. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). The eight corners rule provides that "[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). The alleged facts within the four corners of the latest amended pleading and the plain language within the four corners of the insurance policy are the focus of the court's inquiry in determining a duty to defend. *Northfield Ins. Co. v. Loving Home Care Inc.*, 363 F.3d 523, 531 (5th Cir. 2004). Texas strictly applies the eight corners rule and extrinsic evidence outside of the pleading and the policy is not considered absent a very narrow exception that the Texas Supreme Court has never recognized.[3] *Id*. at 529; *GuideOne Elite*, 197 S.W.3d at 308. "In reviewing the underlying pleadings, we focus on the factual allegations that show the origin of the damages rather than on the legal theories advanced." *See Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 309–10 (5th Cir. 2010) (citing *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677 (Tex. App.—Houston [14th Dist.] 1993, writ denied)).

---

[3] *See e.g., Atain Specialty Ins. Co. v. Ctr. Res., Inc.*, No. CV H-14-2919, 2016 WL 6909292, at *2 (S.D. Tex. Feb. 22, 2016) (internal quotation marks, alterations, and citation omitted) ("At minimum, when any of the narrow circumstances of the so-called *Northfield* exception are not met, the Court is without authority to create an exception where the Texas Supreme Court has specifically declined to do so.").

"Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts in general." *Scottsdale Indem. Co. v. Rural Trash Serv., Inc.*, 142 F. Supp. 3d 530, 534 (S.D. Tex. 2015) (citation omitted).  If the policy is ambiguous, it "must be strictly construed in favor of the insured to avoid the exclusion." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006).

The insured bears the initial burden of showing that a claim against it is potentially covered by the insurance policy. *Northfield*, 363 F.3d at 528.  "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  In other words, "[e]ven if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage." *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983)).

If the insurer relies on a policy exclusion to deny coverage, "the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all claims, also within the confines of the eight corners* rule." *Northfield*, 363 F.3d at 528 (emphasis added).  To assess the applicability of policy exclusions, "a reviewing court must interpret the complaint liberally and construe the exclusion narrowly, resolving any ambiguity in favor of the insured." *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013) (citing *Zurich,* 268 S.W.3d at 491). Courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.

1987) (citation omitted). However, the "rules favoring the insured ... are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).

**C.    DUTY TO INDEMNIFY**

In Texas, the duty to defend and the duty to indemnify are distinct duties. *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Generally, the duty to indemnify question is only justiciable after the underlying suit is concluded unless the same reasons that negate the duty to defend also negate the duty to indemnify. *Id*. at 84.

### III. DISCUSSION

**A.    THE COMMON LAW "MISREPRESENTATION DEFENSE"**

Insured Plaintiffs contend that Texas common law generally applicable to voiding or rescinding an insurance policy for misrepresentation precludes Liberty from applying the Application Exclusion. More specifically, Insured Plaintiffs argue the "misrepresentation defense" is settled Texas law, and that an insurer must plead and prove five elements before avoiding a policy because of a misrepresentation: (1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making the same; and (5) the materiality of the representation. *Mayes v. Mass. Mut. Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex. 1980).

Liberty recognizes that the "misrepresentation defense" applies when a party seeks to void a policy because of a misrepresentation, but claims that Insured Plaintiffs miss the mark here because Liberty is not seeking to rescind or avoid the policy. Instead, Liberty readily acknowledges its intent to be bound by and enforce the express terms of the policy, arguing that

the Application Exclusion removes from coverage only those claims arising from misstatements or untruths in the Application.

The Court agrees with Liberty that Insured "Plaintiffs are complain[ing] that Liberty has failed to plead and prove the elements of a defense that Liberty is not moving on at this time." The misrepresentation cases relied on by Insured Plaintiffs are readily distinguishable from the present case. In some of the cases cited by Insured Plaintiffs, the insurer sought to void or invalidate the entire policy, something Liberty is not seeking here. *See, e.g., Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991); *One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, No. 4:11-CV-3061, 2012 WL 1155739 (S.D. Tex. Apr. 5, 2012); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994); *Medicus Ins. Co. v. Todd*, 400 S.W.3d 670 (Tex. App.— Dallas 2013, no pet.); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 780 S.W.2d 417 (Tex. App.—Texarkana 1989, writ withdrawn). In other cases cited by Insured Plaintiffs, the insurance policies hinged on a condition precedent rather than a policy exclusion like that involved in the present case. *See, e.g., Qiuhong Liu v. Fid. & Guar. Life Ins. Co.*, 282 F. App'x 304 (5th Cir. 2008); *E & L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272 (Tex. App.—Beaumont 1998, no pet.). Accordingly, the Court finds that the common–law "misrepresentation defense" does not apply to this case because Liberty is not attempting to void or rescind the entire policy.[4]

---

[4] Insured Plaintiffs also claim that Texas Insurance Code §705.004(a) prohibits Liberty from applying the Application Exclusion. Section 705.004(a) provides that "an insurance policy provision that states that false statements made in the application for the policy or in the policy make the **policy void or voidable**: (1) has no effect; and (2) is not a defense in a suit brought on the policy." TEX. INS. CODE ANN. §705.004(a) (emphasis added). The express terms of the statute make clear that it only applies to a policy provision that seeks to make the "policy void or voidable." As noted above, that is not the case here. Liberty is not seeking to void the entire policy, but instead trying to enforce the specific terms of a policy exclusion.

**B.** **THE 90–DAY NOTICE REQUIREMENT OF TEXAS INSURANCE CODE §705.005(B)**

Insured Plaintiffs next argue that Liberty's failure to plead or prove its compliance with the 90–day notice requirement in Texas Insurance Code §705.005(b) precludes Liberty's reliance on the misstatement in the Application. It is undisputed that Liberty did not provide the Insured Plaintiffs with notice prior to the 91st day after Liberty discovered the misstatement in the Application. The question is whether §705.005(b) applies to the facts of this case.

Section 705.005(b) provides that "[a] defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy only if the defendant shows at trial that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant **refused to be bound by the policy**." TEX. INS. CODE ANN. §705.005(b) (emphasis added).

Liberty argues that §705.005(b) is not relevant here because the plain language of the statute provides that it only applies when an insurer refuses to be bound by the policy. Liberty notes that it is not seeking to void the entire policy, but rather "desires to remain bound by the Policy" by seeking to enforce the Application Exclusion. In response, Insured Plaintiffs claim that the "refused to be bound" language in the statute is not limited to situations in which an insurer seeks to void an entire policy, but also applies when an insurer denies coverage for a particular claim. The Court agrees with Liberty that §705.005(b) is not applicable here.

In interpreting a statute, courts must "always turn to one, cardinal canon before all others": "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted). It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it

according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).  Where possible, every word in a statute should be given meaning.  *Nalle v. Comm'r of Internal Revenue*, 997 F.2d 1134, 1139 (5th Cir. 1993).

Section 705.005(b) specifies that it only applies when an insurer "refuse[s] to be bound by the policy."  The statutory language is clear and unambiguous.  In this case, Liberty is not refusing to be bound by the policy. To the contrary, Liberty readily admits that it "intends to remain bound by and enforce the express terms of the Policy with [the Insured] Plaintiffs …." Accordingly, this Court finds that §705.005(b) does not apply.[5]

### C.  DUTY TO DEFEND

Insured Plaintiffs have identified two proceedings that purportedly qualify for coverage under the Policy: the Harris County Lawsuit and AAA Arbitration.  For purposes of determining Liberty's duty to defend, the Court must independently consider the allegations contained in the live pleadings in each underlying proceeding, in conjunction with the language of the Policy's relevant coverage provisions.  *See Northfield*, 363 F.3d at 528.  The Court addresses each underlying proceeding in turn.

#### 1.  Harris County Lawsuit

FarmAssure, the counter-plaintiff in the Harris County Lawsuit, brought a myriad of claims—more fully described above—against the Dunns in their capacity as officers and directors of Columbia Lloyds.  Those claims include—among others—allegations of business disparagement, usurpation of corporate opportunities, and breaches of the duties of loyalty, good faith, and fair dealing.  The factual allegations underpinning the alleged claims includes

---

[5] Insured Plaintiffs rely heavily on *Thompson v. Diamond State Ins. Co.*, No. 4:06–CV–154, 2008 WL 11344903 (E.D. Tex. May 2, 2008) for the proposition that §705.005(b) applies not only when an insurer seeks to void an entire policy, but also when an insurer refuses to honor its obligations for a particular claim.  For the reasons stated above, the Court does not find this opinion persuasive and respectfully disagrees.

allegations that: the Dunns, acting through Columbia Lloyds misappropriated FarmAssure's proprietary software; the Dunns, acting through Columbia Lloyds, misappropriated "FarmAssure's methods, ideas, and processes for their own gain"; and the Dunns filed the Harris County Lawsuit seeking to inspect FarmAssure's books and records without "a proper or reasonable purpose under applicable law" and solely "for their own personal gain, to the direct detriment of FarmAssure and its members."   For this conduct and other conduct more fully detailed in the Harris County Lawsuit, FarmAssure sought "actual and punitive damages, as well as attorneys' fees, costs of court, and all other relief to which it is justly entitled."

The Policy provides coverage for "any **Claim** first made against the **Insured Persons** during the **Policy Period** … for any **Wrongful Acts** by the **Insured Persons** taking place prior to the end of the **Policy Period**."

As officers or directors of Columbia Lloyds, the Dunns qualify as Insured Persons under the Policy.  This is so because the policy defines an Insured Person as "any one or more persons who were, now are or shall be duly elected or appointed directors … [or] officers … of the **Company**."  The Company means the "Parent Company," defined as "the organization first named in Item 1 of the Declarations," and its subsidiaries.  Columbia Lloyds is the organization identified in Item 1 of the Declaration.

The Harris County Lawsuit, which was filed during the policy period on May 18, 2016, easily qualifies as a Claim, as it is a "civil proceeding … against [an] Insured."  Furthermore, the factual allegations against the Dunns in their official capacity, as described above and more fully detailed in the Harris County Lawsuit, potentially constitute Wrongful Acts under the Policy since Wrongful Acts are defined as "any error, misstatement, misleading statement, act,

omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons** in their capacity as such, or … by the **Company.**"

The only remaining determination is whether the alleged Wrongful Acts took place prior to the end of the Policy Period, which is between March 8, 2016 and March 8, 2017.  According to the allegations in the Harris County Lawsuit, the Dunn's Wrongful Acts began as early as September 2015 and continued through at least April 2016, which is prior to the end of the Policy Period.  In addition, the counterclaims against the Dunns in the Harris County Lawsuit were filed in May of 2016 and reported to Liberty in September of 2016; thus, both the claim and the reporting of the claim occurred during the policy period.

### 2.  AAA Arbitration

In the AAA Arbitration, FarmAssure asserted ten causes of action against Columbia Lloyds and MDOW.  Those claims include—among others—allegations that Columbia Lloyds and MDOW: disparaged FarmAssure to various entities; misappropriated FarmAssure's methods, ideas, and processes for their own gain; and stole FarmAssure's trade secrets.  The factual underpinning of FarmAssure's claims include allegations that Columbia Lloyds and MDOW used its audits of FarmAssure "to misappropriate FarmAssure's methods, ideas, and processes for their own gain."  FarmAssure also alleged that Columbia Lloyds and MDOW communicated disparaging statements to FarmAssure's independent agents, reinsurers, … and others"—such statements being that "FarmAssure misappropriated escrow funds, … FarmAssure was insolvent, … FarmAssure was selling policies that it was not permitted to sell," and "FarmAssure's agents were not appointed to write insurance for MDOW."  This type of conduct, according to FarmAssure, resulted in harm to its reputation and lost business opportunities, for

which "FarmAssure seeks actual and punitive damages, as well as attorneys' fees, costs of court, pre- and post-judgment interest, and all other relief to which it is justly entitled."

As noted above, the Policy provides coverage for "any **Claim** first made against the **Company** during the Policy Period … for any **Wrongful Acts** by the Company taking place prior to the end of the **Policy Period."**

The same definitions applied above in the Harris County Lawsuit analysis apply here. Again, the Company means the "Parent Company," defined as "the organization first named in Item 1 of the Declarations," and its subsidiaries. Columbia Lloyds is the organization identified in Item 1 of the Declaration. MDOW is identified as a subsidiary of Columbia Lloyds.

The AAA Arbitration, which was filed during the policy period, constitutes a Claim, as it is an "arbitration proceeding against [an] Insured."

The factual allegations against Columbia Lloyds and MDOW, as described above and more fully detailed in the AAA Arbitration, potentially constitute Wrongful Acts under the Policy since Wrongful Acts are defined as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted … by the **Company.**"

The only remaining determination is whether the alleged Wrongful Acts took place prior to the end of the Policy Period, which is between March 8, 2016, and March 8, 2017. According to the allegations in the AAA Arbitration, Columbia Lloyds' and MDOW's Wrongful Acts began as early as September 2015 and continued through at least May 2016, which is prior to the end of the Policy Period. Moreover, the claims against Columbia Lloyds and MDOW in the AAA Arbitration were filed in July 2016 and reported to Liberty in September of 2016; thus, both the claim and the reporting of the claim occurred during the policy period. Consequently,

the Court finds that the AAA Arbitration contains at least some claims that are potentially covered under the Policy.

In short, the Court finds that Insured Plaintiffs have carried their initial burden of showing that both the Harris County Lawsuit and AAA Arbitration are potentially covered by the Policy. Because Liberty does not contest Insured Plaintiffs' arguments in this regard and relies solely on a policy exclusion to deny coverage, the Court turns to the relevant policy exclusion.[6]

## D.   POLICY EXCLUSION

Liberty contends that the Application Exclusion applies to all claims alleged in the Harris County Lawsuit and AAA Arbitration, and thus it has no duty to defend in either proceeding.

In assessing the applicability of Application Exclusion, this Court must independently consider the factual allegations contained in the live pleadings in each underlying proceeding, in conjunction with the language of the Application Exclusion. *See Northfield*, 363 F.3d at 528 ("the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule"). Thus, as succinctly explained by Insured Plaintiffs, the Court must determine if "*all* of FarmAssure's alleged damages, as supported by its factual allegations, are 'based upon, arising out of or in connection with [the] misstatement or untruth' in the Application, *e.g.*, that there were no changes to Columbia Lloyds' Board of Directors or Key Executives during the preceding 12 months." Dkt. 26 at 13. The Court addresses each underlying proceeding in turn.

### 1.  Harris County Lawsuit

In the Harris County Lawsuit, FarmAssure summarizes its counterclaims against Columbia Lloyds and MDOW as follows:

---

[6] Liberty does not contest that the claims alleged in the Harris County Lawsuit and AAA Arbitration are potentially covered under the Policy. Instead, Liberty focuses its discussion on the applicability of the Application Exclusion.

> John Dunn and Milby Dunn, II have conspired with and used
> MDOW/[Columbia Lloyds]—the companies they control—to perpetuate a
> campaign of disparagement, fraud, and other tortious conduct aimed at
> destroying FarmAssure's reputation in the insurance industry, eliminating
> FarmAssure as a potential competitor, cutting FarmAssure out of its own
> programs, and stamping out FarmAssure's ability to service its customers,
> agency relationships, and other partnerships. For this conduct, FarmAssure
> seeks actual and punitive damages, as well as attorneys' fees, costs of court,
> and all other relief to which it is justly entitled.

On its face, none of this conduct appears to have any relation to the change in Columbia Lloyd's

management.

The "Factual Background" section of the counterclaim does mention the September 2015

termination of Mann, the former Columbia Lloyds' President and Chief Executive Officer, as

well as Sam Bana joining Columbia Lloyds in the role as Chief Operating Officer.  However, the

Harris County Lawsuit does not specifically present the change in executive leadership as

anything other than a background fact.  Plainly stated, the connection between Columbia Lloyds'

change in leadership and any alleged damages suffered by FarmAssure is tenuous, at best.

Liberty seemingly acknowledges this fact, as it forcefully argues in its motion that it need only

demonstrate an incidental relationship between the change in executive leadership and any

alleged damages:

> Here, the alleged wrongdoing in the Underlying Matters started with Mann's
> termination, and continued through a course of conduct allegedly designed to
> steal business from FarmAssure, which was founded and run by Mr. Mann.
> Therefore, the Underlying Matters bear a strong relationship—and certainly
> an incidental relationship—to Mann's termination.

Dkt. 20 at 24.

The Application Exclusion excludes from coverage "any claim based upon, arising out of

or in connection with such misstatement or untruth."  Under Texas law, the phrase " 'arise out

of' means that there is simply a 'causal connection or relation,' ... which is interpreted to mean

that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations omitted). "In cases involving separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion." *Willbros*, 601 F.3d at 311. Both parties recognize this authority, but disagree about its application to this matter. Specifically, Insured Plaintiffs argue:

> [T]he factual allegations of disparagement in both the AAA Arbitration and the Harris County Lawsuit support the possibility of a "but for" cause of FarmAssure's alleged damages unrelated to the change in management at Columbia Lloyds. It is certainly plausible that the alleged disparaging statements would have been made by the Plaintiff Insureds (if they were made at all) even if Mann had remained at Columbia Lloyds and Bana had never been hired. As the pleadings themselves cannot eliminate the possibility of a "but for" causation unrelated to Mann or Bana, Liberty cannot rely on its Application Exclusion to deprive its insureds of a defense.

Dkt. 26 at 18 (internal citation omitted). Liberty takes an opposite position, arguing:

> But here, as the story has been alleged, if Mann had never been fired, the relationship would not have soured, and the parties would not be suing each other. The origin of damages began with Mann's termination and all of Mann's claims arose from—or at least ran concurrently with—Mann's termination. Because Mann's termination cannot be separated from the other events, the Application Exclusion subsumes all claims.

Dkt. 28 at 13.

The Court is persuaded by Insured Plaintiffs' argument and example. Having reviewed the factual allegations in the Harris County Lawsuit, the Court finds that, at most, the change in executive leadership at Columbia Lloyds is a separate and independent cause of many of FarmAssure's alleged damages. The Harris County Lawsuit alleges damages that could have occurred even if there was no change in executive leadership at Columbia Lloyds. Moreover, many allegations in the Harris County Lawsuit against Insured Plaintiffs do not even appear to bear any relationship to a change in management (that is, Mann's departure from Columbia

Lloyd's or Bana's hiring at Columbia Lloyds). These allegations include disparaging or fraudulent statements, withholding of commissions and fees, misappropriation of trust funds from MDOW and interference with FarmAssure's customers and business partners. At a bare minimum, the presence of one unrelated claim in the Harris County Lawsuit triggers an obligation for Liberty to defend its insureds against all claims brought in the Harris County Lawsuit. Since "any doubts regarding whether the allegations trigger a defense are resolved in favor of the insured," this Court determines that Liberty owes a duty to defend the Harris County Lawsuit. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (quotation and citation omitted). *See also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) ("If *any* allegation in the complaint is even *potentially* covered by the policy then the insurer has a duty to defend the insured.") (emphasis in original) (citation omitted).

### 2. AAA Arbitration

In the AAA Arbitration, FarmAssure summarizes its counterclaims against Columbia Llyods and MDOW as follows: damage to FarmAssure arising from the filing of the lawsuit in Harris County District Court; "active effort to disparage FarmAssure among its customers, agents and reinsurance partners"; misappropriating FarmAssure's business "by concocting grounds for termination of the [managing general agency agreement between MDOW and FarmAssure ("MGA"),]" and acting "in complete disregard of the MGA provisions"; refusing to "allow FarmAssure to receive payment for its work by way of rightfully earned ceding commissions and fees"; forcing "FarmAssure to seek affirmative relief from the AAA"; refusing to return to FarmAssure "over $1 million in policyholder premium escrow money"; and cutting FarmAssure out of its "own programs and stamping out FarmAssure's ability to services its

customers, agency relationships, and other partnerships." After setting forth these allegations, FarmAssure states "[f]or this conduct, FarmAssure seeks actual and punitive damages …."

In the "Factual Background" section, FarmAssure provides more details about this summarized conduct.  As is the case in the Harris County Lawsuit, the "Factual Background" section in the AAA Arbitration does mention the September 2015 termination of Mann as President and Chief Executive Officer of Columbia Lloyds, as well as Bana joining Columbia Lloyds as Chief Operating Officer sometime in October 2015.  However, the AAA Arbitration does not specifically present the change in executive leadership as anything other than a background fact.

Because the alleged damages and factual allegations presented in the AAA Arbitration are substantially similar to those presented in the Harris County Lawsuit, the Court finds that the same analysis applies and the same outcome is warranted.  Consequently, the Application Exclusion does not provide a basis for Liberty to deny coverage for Insured Plaintiffs' defense in the AAA Arbitration.[7]

## E.   DUTY TO INDEMNIFY

Liberty argues in its Motion for Summary Judgment that "it has no duty to indemnify because the same reasons that negate the duty to defend likewise negate any possibility Liberty will ever have to indemnify."  Dkt. 20 at 25.  Because the Court has determined that Liberty has a duty to defend, Liberty's argument on the indemnity issue fails.

---

[7] Liberty also raises an argument as to Insured Plaintiffs' claims for statutory damages under Chapter 542 of the Texas Insurance Code. Specifically, Liberty argues that its success on the issue of the Application Exclusion, coupled with Insured Plaintiffs' failure to allege any injury independent of a right to receive benefits, requires Insured Plaintiffs' statutory damages claims to fail as a matter of law.  Because the Court finds that Liberty has a duty to defend, notwithstanding the Application Exclusion, Liberty's argument regarding Insured Plaintiffs' statutory damages claims fails.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Insured Plaintiffs' Partial Motion for Summary Judgment (Dkt. 21) be GRANTED, and Liberty's Motion for Summary Judgment (Dkt. 20) be DENIED.

Accordingly, the Court determines that Insured Plaintiffs are entitled to a defense by Liberty against all claims asserted against Insured Plaintiffs in the Harris County Lawsuit, and all claims asserted against Insured Plaintiffs in the AAA Arbitration.

The Court further determines that Liberty breached its contract with Insured Plaintiffs by wrongfully denying coverage under the Policy and refusing to provide a defense to the Insured Plaintiffs against the allegations asserted in the Harris County Lawsuit and AAA Arbitration.

The quantum of Insured Plaintiffs' recovery against Liberty for defense costs, fees and expenses, as well as Insured Plaintiffs' remaining claims against Liberty, shall proceed to resolution.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 14th day of March, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE