United States District Court
Southern District of Texas
**ENTERED**
December 12, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

COLUMBIA LLOYDS INSURANCE       §
COMPANY, *et al.*,              §
                                §
        Plaintiffs,             §
                                §
VS.                             §       CIVIL ACTION NO. 3:17-CV-005
                                §
LIBERTY INSURANCE               §
UNDERWRITERS, INC.,             §
                                §
        Defendant.              §

## MEMORANDUM AND RECOMMENDATION[1]

Before the Court is Insured Plaintiffs' Motion for Partial Summary Judgment on Damages ("Insured Plaintiffs' Motion for Summary Judgment") and Defendant Liberty Insurance Underwriters Inc.'s Cross-Motion for Summary Judgment, and Opposition to Plaintiffs' Motion for Partial Summary Judgment on Damages ("Liberty's Motion for Summary Judgment"). Dkts. 56, 69.[2] All dispositive pretrial motions in this case were

---

[1] This Memorandum and Recommendation is filed under seal because it may disclose materials submitted under seal by the parties during the briefing process. By separate order, the Court will provide the parties with a deadline to propose redactions to assist the Court in producing a version suitable for public consumption. After a redacted version of the Memorandum and Recommendation is finalized, it will be filed and made fully accessible to the public.

[2] Liberty's Motion for Summary Judgment was originally filed under seal on August 3, 2018, because it is based, in part, on sensitive and confidential information. Dkt. 69. At the same time, Liberty also filed its Appendix of Summary Judgment Evidence under seal. Dkt. 70. In the interest of ensuring that the Court remain as open a forum as possible, the Court ordered that Liberty file a redacted version of the motion and its appendix of evidence for public viewing. Liberty filed the redacted motion and appendix of evidence on August 22, 2013. Dkts. 73, 74.

referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 36. Having considered the motions and applicable law, the Court **RECOMMENDS** that Insured Plaintiffs' Motion for Summary Judgment (Dkt. 56) be **GRANTED** in part and **DENIED** in part, and Liberty's Motion for Summary Judgment (Dkt. 73) be **GRANTED**.

## BACKGROUND

This lawsuit arises out of an insurance coverage dispute[3] between Plaintiffs Columbia Lloyds Insurance Company, MDOW Insurance Company, John Dunn and Milby Dunn, II (collectively, "Insured Plaintiffs"), and Defendant Liberty Insurance Underwriters, Inc. ("Liberty"). The parties previously filed competing motions for summary judgment on the issue of whether Liberty had a duty to defend Insured Plaintiffs and breached that duty in regards to two underlying matters: *John Dunn and Milby Dunn, II v. FarmAssure, LLC*, No. 2016-13393 (295th Dist. Ct., Harris County, Tex. Apr. 11, 2016). ("Harris County Lawsuit") and *FarmAssure, LLC v. MDOW*

As a result of Liberty filing its motion under seal, some briefing responsive to Insured Plaintiffs' Motion for Summary Judgment and Liberty's Motion for Summary Judgment was also filed under seal as follows:

- Insured Plaintiffs' Reply in Support of Motion for Summary Judgment and Response to Liberty's Motion for Summary Judgement (sealed version—Dkt. 76; redacted version—Dkt. 87);

- Liberty's Reply in Support of Motion for Summary Judgment (sealed version—Dkt. 79; redacted version—Dkt. 88); and

- Both parties filed an additional letter brief, which remains under seal, and no redacted version has been filed (Dkts. 90, 91).

[3] The relevant insurance policy is Private Advantage Policy number PAHOAA93KE001, which Liberty issued to Columbia Lloyds Insurance Company for the policy period March 8, 2016 to March 8, 2017 (the "Policy"). The Policy includes Directors and Officers Liability and Company Liability coverage with a maximum aggregate limit of liability of $2,000,000.

*Insurance Company and Columbia Lloyds Insurance Company*, No. 01-16-00001-1237, American Arbitration Association ("AAA Arbitration"). On March 14, 2018, the Court issued a Memorandum and Recommendation determining "that Insured Plaintiffs [were] entitled to a defense by Liberty against all claims asserted against Insured Plaintiffs in the Harris County Lawsuit, and all claims asserted against Insured Plaintiffs in the AAA Arbitration[, and] . . . Liberty breached its contract with Insured Plaintiffs by wrongfully denying coverage under the Policy and refusing to provide a defense." *Columbia Lloyds Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2018 WL 1569718, at *11 (S.D. Tex. Mar. 14, 2018), *report and recommendation adopted*, No. 3:17-CV-5, 2018 WL 1561816 (S.D. Tex. Mar. 30, 2018). The Court's previous determination serves as the backdrop for the instant dispute.

Several weeks after the Court decided the duty to defend dispute, Insured Plaintiffs moved for partial summary judgment, arguing that based on Liberty's failure to defend the Harris County Lawsuit and AAA Arbitration, Insured Plaintiffs are entitled to recover as damages all of the defense costs and expenses they paid in mounting their own defense, along with interest and penalties under the Texas Prompt Payment of Claims Act ("TCPPA"). In other words, Insured Plaintiffs' motion seeks to quantify the various damages that they believe flow from the Court's earlier determination on the duty to defend issue.

Three days after Insured Plaintiffs filed their Motion for Summary Judgment, the parties filed a joint letter requesting a pre-motion conference. *See* Dkt. 58. The joint letter detailed an ongoing discovery dispute, primarily related to the Insured Plaintiffs'

3

refusal to produce the AAA Arbitration award. The Court held two conferences to discuss the dispute and allowed limited briefing on the issue. Ultimately, the Court ordered Insured Plaintiffs to produce the AAA Arbitration award by a date certain and set forth a briefing schedule related to Insured Plaintiffs' pending summary judgment motion and any forthcoming response/competing motion for summary judgment.

In compliance with the Court's briefing schedule, Liberty filed its Motion for Summary Judgment. Broadly speaking, Liberty makes two assertions in its Motion for Summary Judgment. First, Liberty contends that the Policy's Fraud Exclusion[4] bars coverage for any defense costs and expense incurred relating to the AAA Arbitration, notwithstanding its duty to defend. Based on this assertion, Liberty argues that Insured "Plaintiffs cannot recover any legal fees, costs, or other damages related [to the AAA Arbitration]." Dkt. 69 at 22. Liberty next attacks the specific fees and expenses Insured Plaintiffs seek to recover, arguing that certain fees and expenses are not covered under the policy or are inadequately supported by the proffered summary judgment evidence.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted). "The moving party

---

[4] The term Fraud Exclusion refers to a specific provision in the Policy, which is fully described below.

4

. . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (citations and quotation marks omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted). "On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citation omitted).

## THE FRAUD EXCLUSION

The primary dispute presented in the parties' briefing revolves around the Policy's Fraud Exclusion. If the Fraud Exclusion applies as argued by Liberty, the Court's determination of any fees and damages—i.e., the remaining issues in both motions—will

significantly be affected.   For this reason, although Insured Plaintiffs' Motion for Summary Judgment was first filed, the Court will first address the Fraud Exclusion argument, which was raised in Liberty's Motion for Summary Judgment.

**A.    POLICY PROVISIONS AND DEFINITIONS[5]**

Before the Court discusses Liberty's specific and nuanced arguments concerning the Fraud Exclusion, the Court sets forth the Policy's relevant provisions and definitions related to the exclusion.

### 1. Fraud Exclusion

The Fraud Exclusion provision provides:

> The Insurer shall not be liable under any Insuring Clause in this Coverage Part for **Loss** on account of any **Claim** made against any **Insured**:

Dkt. 70 at 22.   Through Endorsement No. 4 to the Policy, the exclusionary language continues:

> [B]ased upon, arising out of, or attributable to any deliberately fraudulent or criminal act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication in the underlying action with respect to an **Insured** establishes that such act, omission or violation occurred[.]

*Id.* at 41.

### 2. Claim

> **Claim** means: . . . any arbitration, mediation or other similar dispute resolution proceeding against any **Insured**.

*Id.* at 38.

---

[5] The Court uses these defined terms throughout this opinion.  When a defined term is used, the Court will indicate so by capitalizing the first letter in the word.

### 3.  Loss

**Loss** means the amount which the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, any award of pre-judgment and post-judgment interest, settlements, and **Defense Costs**.

*Id.* at 40.

### 4.  Defense Costs

**Defense Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Company**[6] or other overhead of the **Company**) incurred by the **Insureds** in defending a **Claim** against such **Insured** . . . .

*Id.* at 11.

### 5.  Insured

**Insured** . . . mean . . . the **Insured Persons**, and . . . solely with respect to the Insuring Clauses B, C, D, the **Company**.

*Id.* at 21.

### 6.  Insured Persons

**Insured Persons,** . . . means . . . any one or more persons who were, now are or shall be duly elected or appointed directors . . . [or] officers . . . of the **Company** . . . .

*Id.*

---

[6] Company includes Columbia Lloyds Insurance Company and MDOW Insurance Company. *See* Dkt. 70 at 8, 11, 12, 56.

**B.     THE PARTIES' FRAUD EXCLUSION ARGUMENTS**

**1. Liberty's Argument**

Liberty argues that the plain language of the Fraud Exclusion, in conjunction with the relevant Policy definitions, make clear that if the AAA Arbitration arises out of, is based upon, or is attributable to deliberate fraud, and the final adjudication of the AAA Arbitration contains a finding that an Insured committed a deliberate fraud, Liberty cannot be held liable for any legal fees, costs, or other damages related to the AAA Arbitration. Thus, Liberty avers that the application of the Fraud Exclusion turns on whether the AAA Arbitration award reveals the necessary finding of deliberate fraud.

Liberty has submitted the AAA Arbitration award, which contains the following:

Dkt. 70 at 98. Based on these facts, Liberty argues that the Fraud Exclusion clearly forecloses Insured Plaintiffs' entitlement to any damages related to the AAA Arbitration.

Liberty also argues:

> [B]ecause the defined term Loss includes Defense Costs, [Insured] Plaintiffs contractually agreed that where the Fraud Exclusion applies, Liberty cannot be liable for and has no obligations with respect to Defense Costs . . . . Because those Defense Costs are not covered, [Insured] Plaintiffs fundamentally have no contractual right to keep (or receive) them; that is, they agreed to return them.

Dkt. 69 at 18. Moreover, Liberty notes that because the Fraud Exclusion is determined after final adjudication, it "is outcome dependent [and] . . . cannot be invoked until after a

8

Claim is defended and the requisite adverse finding is made." *Id.* at 8.  Thus, the Loss/Defense Costs to which the Fraud Exclusion applies will always include costs and expenses that were incurred prior to the final adjudication.  Because of this, Liberty argues that the Fraud Exclusion clearly allows it to recover through reimbursement any amounts already paid, which are later determined to be excluded pursuant to the Fraud Exclusion.[7]

### 2. Insured Plaintiffs' Argument

Insured Plaintiffs offer several arguments in response. First, they argue that judicial estoppel and the law of the case doctrine, based on the Court's earlier duty to defend determination, foreclose Liberty's Motion for Summary Judgment—which Insured Plaintiffs seem to perceive as an underhanded attempt to have the Court reconsider its duty to defend ruling.  Insured Plaintiffs go on to argue that the eight corners rule prohibits the Court's consideration of the AAA Arbitration Award.  Insured Plaintiffs also argue that because the AAA Arbitration contained causes of action not related to the fraud allegation, ordinary duty to defend jurisprudence and a specific Policy provision adopting ordinary duty to defend jurisprudence requires Liberty to defend all causes of action in the AAA Arbitration.  In addition, Insured Plaintiffs contend that if the Fraud Exclusion applies, it can only be applied to fees and expenses incurred in the underlying matter after the final adjudication because prior to that point, Liberty had an obligation to pay based on the Court's duty to defend determination.  Finally, Insured

---

[7] Liberty also argues in passing that Insured Plaintiffs assumed their own defense in the Harris County Lawsuit and AAA Arbitration.  This argument is not sufficiently supported by any summary judgment evidence.

Plaintiffs argue that the Fraud Exclusion does not expressly and unequivocally convey Liberty the right to seek reimbursement of amounts that were paid or required to be paid under its duty to defend.

## C.   ANALYSIS

The Fraud Exclusion is a unique Policy provision. The language of the exclusion clearly includes a wide range of fees, expenses, and damages—nearly all of which are typically paid by an insurer who has the duty to defend. Ordinarily, after determining that an insurer has breached its duty to defend, the Court would assess the damages occasioned by the breach. This is why each of Insured Plaintiffs' primary responsive arguments seem to be hitched to the duty to defend. However, the Fraud Exclusion in this case turns this ordinary procedure on its head.

The Fraud Exclusion expressly predicates its applicability on a fraud finding made upon "final adjudication in the underlying action." Dkt. 70 at 41. This fact alone takes the Fraud Exclusion well outside the norms associated with deciding the duty to defend because the duty to defend, as correctly noted by Insured Plaintiffs, is nearly always decided based solely on the relevant policy and the allegations made in an underlying matter—i.e., the eight corners rule. The parties' incorporation of clear and unambiguous outcome dependent language into the Fraud Exclusion memorializes their agreement that in a factually appropriate case, Liberty's liability for fees, expenses, and damages might shift from liable (under the duty to defend) to not liable based on the Fraud Exclusion.

Insured Plaintiffs' arguments resisting this interpretation are unpersuasive. The Court will address each argument in turn.

10

### 1.  Judicial Estoppel and the Law of the Case

Insured Plaintiffs contend that due to the Court's earlier finding that Liberty breached its duty to defend, Liberty's Motion for Summary Judgment is precluded by judicial estoppel and the law of the case doctrine.  The Court disagrees and finds that neither judicial estoppel nor the law of the case doctrine have any impact on the applicability of the Fraud Exclusion.

Judicial estoppel, which "is a common law doctrine that prevents a party from assuming inconsistent positions in litigation," is only implicated if three requirements are met: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 670 (5th Cir. 2018) (citations and internal quotation marks omitted).  Similarly, the law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation and quotation marks omitted).  Importantly, the "doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Clifford v. Gibbs*, 298 F.3d 328, 331 (5th Cir. 2002) (citation and quotation marks omitted).

Here, Liberty's reliance on the Fraud Exclusion is not inconsistent with the position it took in the earlier duty to defend briefing.  Insured Plaintiffs' arguments on this point ask the Court to conclude that Liberty's earlier adherence to ordinary duty to

defend principles, such as the eight corners rule, are now somehow inconsistent with the assertion of the Fraud Exclusion.   This argument might have some force if Liberty possessed the AAA Arbitration award when the Court considered the duty to defend issue.  But Liberty did not have access to the AAA Arbitration award until well after the Court issued its duty to defend ruling.  For this reason alone, the Court does not find any inconsistency between Liberty's earlier positions and its current assertion of the Fraud Exclusion.  This, however, is not the only fact undermining Insured Plaintiffs' position.

The plain language of the Policy does not suggest that the Fraud Exclusion would, or could, ever be invoked in conjunction with the duty to defend.  To the contrary, the Fraud Exclusion by its terms can only be determined at the end of a dispute (i.e., upon "final adjudication"), whereas the duty to defend is determined by the allegations made at the beginning of a suit.  Given this clear Policy language, the Court finds that the Fraud Exclusion is simply not bound to the duty to defend—instead, it is properly determined separate and independent from the duty to defend.[8]  Thus, Liberty's separate assertion of the Fraud Exclusion is consistent with the terms of the Policy and not incompatible with its duty to defend arguments.[9]

---

[8] This determination weakens Insured Plaintiffs' additional argument regarding the Policy's allocation provision.  As explained in their briefing, the allocation provision contractually memorializes "the longstanding Texas rule on the scope of the duty to defend: when the complaint alleges at least one claim potentially within coverage, the insurer has a duty to defend all claims against the insured." Dkt. 76 at 17–18 (citation omitted).  Since the determination of the Fraud Exclusion is not tied to the duty to defend, this argument misses the mark.

[9] This also undercuts any argument against Liberty for failing to pursue the Fraud Exclusion at an earlier time.  The Fraud Exclusion did not require it to assert the exclusion at the duty to defend stage, and the facts needed to assert the exclusion were not yet known to Liberty.

These same reasons undermine Insured Plaintiffs' contention that the law of the case doctrine prohibits the Court from considering Liberty's Fraud Exclusion arguments. It is axiomatic that if neither party raised the issue of the Fraud Exclusion in any of the briefs on the issue of the duty to defend, the Court did not consider the Fraud Exclusion before issuing its duty to defend ruling. In other words, the Court's earlier decision simply did not opine in any way on the Fraud Exclusion and its potential impact in this case. Thus, Insured Plaintiffs' law of the case doctrine argument is misplaced. *See Clifford*, 298 F.3d at 331 (explaining the law of the case "doctrine applies only to issues that were actually decided").

## 2. The Eight Corners Rule

Insured Plaintiffs forcefully argue that the eight corners rule bars this Court's consideration of the AAA Arbitration award. For the purpose of deciding the duty to defend, the Court strictly adhered to the eight corners rule. But the question presently before the Court is not tied to the eight corners rule. Instead, the Court considers whether the Fraud Exclusion can now affect Liberty's liability for amounts that should have been paid pursuant to its duty to defend.

As explained above, this Court views the Fraud Exclusion as separate and independent from the duty to defend. In other words, the Fraud Exclusion is not foreclosed simply because Liberty had a duty to defend. The Fraud Exclusion is written to be outcome dependent, and the Loss expressly made subject to the Fraud Exclusion includes all Defense Costs and fees incurred defending against the relevant Claim. This means the consideration of the Fraud Exclusion will always come after a duty to defend

determination. Thus, the Court finds that the eight corners rule is not an impediment to its consideration of the Fraud Exclusion. To hold otherwise would require this Court to conclude that it is not empowered to consider the documents necessary to determine the application of an exclusion that the parties expressly agreed upon.

### 3. Potentially Covered Claims

Insured Plaintiffs also argue that even if the Fraud Exclusion applies, it only limits liability for the claims within the AAA Arbitration that were based on fraud. This argument is undermined by the plain language of the Fraud Exclusion. The Fraud Exclusion clearly states that, if applicable, Liberty is not liable for "Loss on account of any Claim made against any Insured." Dkt. 70 at 22. Claim is defined in the Policy to mean "any arbitration, mediation or other similar dispute resolution proceeding against any Insured." Dkt. 70 at 38. The Policy's definition of Claim describes the entirety of the underlying proceeding, not just discrete causes of action alleged within the proceeding. Based on the plain language of the Fraud Exclusion, the Court finds no support for Insured Plaintiffs' position.

### 4. Prospective Damages and Reimbursement

Insured Plaintiffs' next argument is really their answer to a critical question in this dispute: If the Fraud Exclusion does not mean what Liberty argues, what does it mean? Insured Plaintiffs argue that the Fraud Exclusion is all about prospective damages arising after the date of final adjudication. Said another way, Insured Plaintiffs argue that the Fraud Exclusion, at most, limits Liberty's liability for fees, expenses, and damages arising after final adjudication, but it has nothing to do with any amounts that were

14

incurred prior to final adjudication and certainly does not indicate a clear intent to allow Liberty to receive a reimbursement for amounts previously paid under its duty to defend.

The Court finds that Insured Plaintiffs' interpretation of the Fraud Exclusion is unreasonable given the plain language of the exclusion. The Fraud Exclusion does not contain any language that supports Insured Plaintiffs' position that a Loss subject to the exclusion runs from the date of the final adjudication. Contrary to Insured Plaintiffs' argument, the Fraud Exclusion's "final judgment" language merely serves as a triggering mechanism. It does not modify or otherwise define the scope of a Loss subject to the exclusion. The scope of the Fraud Exclusion is determined by looking at its first sentence, including the contractually defined terms: "The Insurer shall not be liable . . . for Loss on account of any Claim made against any Insured . . . ." Dkt. 70 at 22. Notably, Loss is not defined in a manner that limits it to prospective damages. Loss includes expenses and damages that may be prospective (indemnity type damages and fees), but it also includes Defense Costs. Defense Costs is defined to include fees and expenses "incurred by the Insureds in defending a Claim against such Insured . . . ." *Id.* at 11. Importantly, this definition describes the fees and expenses in the past tense (i.e., incurred), meaning that Defense Costs subject to the Fraud Exclusion are those incurred at the time the exclusion is triggered by a final adjudication based upon, arising out of, or attributable to any deliberate fraud. Insured Plaintiffs' interpretation, which asks the Court to read this language out of the Fraud Exclusion, is unreasonable.

This analysis dovetails into Insured Plaintiffs' contention regarding Liberty's right to reimbursement. Insured Plaintiffs argue that under Texas law, insurers do not have a

general right to be reimbursed for defense costs, even where a claim is subsequently determined to be uncovered. *See* Dkt. 76 at 20 n.6 (citing *Matagorda Cnty. v. Tex. Assn. of Counties Cnty. Govt. Risk Mgmt. Pool*, 975 S.W.2d 782, 784 (Tex. App.–Corpus Christi 1998), *aff'd* 52 S.W.3d 128 (2000)). In *Matagorda County*, the court considered whether an insurer could obtain reimbursement from its insured, for a settled claim that was later determined to be excluded from coverage. *See* 52 S.W.3d at 129. This is not the scenario presented here. Liberty's invocation of the Fraud Exclusion presents a materially different factual scenario.

Here, the Court considers whether the Fraud Exclusion, which is triggered upon final adjudication, allows Liberty to pursue reimbursement for fees already paid under the duty to defend. The parties have only brought one case to the Court's attention that considered this issue. In *In re Enron*, the court considered a policy containing a fraud or dishonesty exclusion, which could only be triggered upon final adjudication. *See In re Enron Corp. Secs., Derivative & "Erisa" Litig.*, 391 F. Supp. 2d 541 (S.D. Tex. 2005). The *In re Enron* court held that based upon the eight corners rule, the insurer had the duty to pay defense expenses, but if the final adjudication contained a finding sufficient to trigger the exclusion, the insured would be "required to repay the insurer any reimbursements for defense costs made up to that point." *Id.* at 575.

Although *In re Enron* seems to be directly on point, Insured Plaintiffs attempt to distinguish it by arguing that "*In re Enron* . . . is incompatible with the Texas Supreme Court's subsequent decision in *Excess Underwriters v. Frank's Casing Crew & Rental Tools*, 246 S.W.3d 42 (Tex. 2008)." Dkt. 89 at 1. Insured Plaintiffs contend that in

*Frank's Casing* the Texas Supreme Court "held that Texas law does not permit reimbursement of payments made under an insurance policy unless: (1) the insurer had drafted the policy 'to specifically include a reimbursement right,' or (2) obtained the policyholder's 'clear and unequivocal consent' to the insurer's right to seek reimbursement." *Id.* (quoting 246 S.W.3d at 46).   Insured Plaintiffs note that after *Frank's Casing*, the Fifth Circuit has recognized that Texas courts routinely decline "to recognize an implied in-fact, an implied-in-law, or an equitable reimbursement right outside of the insurance policy's provisions." *Id.* (quoting *Charla Aldous, P.C. v. Darwin Nat'l Assurance Co.*, 851 F.3d 473, 486 (5th Cir. 2017)).

The Court is not persuaded by Insured Plaintiffs' attempt to distinguish *In re Enron*.   Neither *Frank's Casing* nor *Aldous* considered an exclusion like the Fraud Exclusion in this case.   By its terms, the Fraud Exclusion clearly provides that, if applicable, Liberty cannot be held liable for any Loss, including incurred Defense Costs, on account of the AAA Arbitration.   Given that sequentially the duty to defend is determined prior to final adjudication, the Fraud Exclusion would have absolutely no meaning as applied to Defense Costs if reimbursement were not permitted.   Indeed, if the Court found that reimbursement is not permitted, it would require the Court to read Defense Costs right out of the definition of Loss, such that Loss would only refer to Liberty's indemnity obligations.   The Court declines to rewrite the party's Policy, and thus adheres to the reasoning announced in *In re Enron*.   Consequently, the Court finds that the Fraud Exclusion includes the right to reimbursement.

17

**D.    FRAUD EXCLUSION DETERMINATION**

In sum, the Court concludes that the Fraud Exclusion forecloses Insured Plaintiffs' entitlement to any legal fees, costs, damages, and expenses related to the AAA Arbitration.

## REMAINING ISSUES

In its earlier ruling on the duty to defend issue, the Court determined that Liberty had a duty to defend the AAA Arbitration and Harris County Lawsuit, and Liberty violated that duty. In their duty to defend briefing, Insured Plaintiffs did not seek a ruling on whether Liberty's failure to defend constituted a violation of the TPPCA. Here, however, Insured Plaintiffs have moved for summary judgment on their TPPCA claims, arguing that Liberty's failure to provide a defense in the AAA Arbitration and the Harris County Lawsuit constitutes a violation of the TPPCA. Insured Plaintiffs seek TPPCA damages related to both the AAA Arbitration and Harris County Lawsuit.

Liberty does not contest that its breach of the duty to defend constitutes a violation of the TPPCA. However, Liberty suggests that the Fraud Exclusion precludes the award of any TPPCA damages related to the AAA Arbitration, and disputes the TPPCA damage amounts Insured Plaintiffs seek related to the Harris County Lawsuit.

The TPPCA "provides for additional damages when an insurer wrongfully refuses or delays payment of a claim." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007). An insurer "who is 'liable for a claim under an insurance policy' and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for

18

'interest on the amount of the claim at the rate of eighteen percent a year as damages, together with reasonable attorney's fees.'" *Id.* (quoting TEX. INS. CODE § 542.060(a)).

Based on the Court's earlier determination that Liberty violated its duty to defend, the Court now finds that Liberty violated the TPPCA by erroneously rejecting Insured Plaintiffs' requests for defense and delaying payment of fees and expenses incurred in the AAA Arbitration and Harris County Lawsuit, and that Insured Plaintiffs are entitled to summary judgment on this claim. *See Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.,* 903 F.3d 435, 450 (5th Cir. 2018) ("The sole basis for [Insurer's] challenge to the district court's grant of summary judgment in favor of [Insured] under the [Texas Prompt Payment of Claims Act] is its assertion that [Insured] failed to establish that [Insurer] either had a duty to defend . . . or that [Insurer] breached that duty.  Having just rejected those assertions, we affirm.") (citing *Admiral Ins. Co. v. Petron Energy, Inc.,* 1 F. Supp. 3d 501, 510 (N.D. Tex. 2014)).  It follows that Insured Plaintiffs are also entitled to summary judgment on their claims for attorney's fees and prejudgment interest under the TPPCA.  *See* TEX. INS. CODE ANN. § 542.060.

These determinations do not end the Court's inquiry.  The Court must still determine the appropriate TPPCA damage amounts related to the AAA Arbitration and Harris County Lawsuit.

**AAA Arbitration:** As explained above, pursuant to the Fraud Exclusion, the Court has found that Insured Plaintiffs are not entitled to recover any Policy benefits related to the AAA Arbitration.  In its briefing, Liberty implies that the application of the Fraud Exclusion also forecloses Insured Plaintiffs' ability to recover TPPCA damages

19

related to the AAA Arbitration.   But Liberty has not fully fleshed out its position. Similarly, and understandably, Insured Plaintiffs did not address in their Motion for Summary Judgment how an adverse Fraud Exclusion ruling might impact their request for TPPCA damages.   Consequently, neither party has offered the Court any guidance on whether TPPCA damages related to the AAA Arbitration are still warranted, and if so, in what manner they should be calculated.   Thus, the issue of TPPCA damages related to the AAA Arbitration remains unresolved.

**Harris County Lawsuit**:  Although Insured Plaintiffs have offered summary judgment evidence to assist the Court in determining the appropriate damage amounts, Liberty has submitted competing summary judgment evidence and offered several arguments contesting the Insured Plaintiffs' summary judgment evidence.   At a bare minimum, there is a fact issue as to the proper calculation of TPPCA damages related to the Harris County Lawsuit.   Therefore, based on this record, the Court finds that it is unable to determine at the summary judgment stage the specific amount of damages, attorney's fees, and prejudgment interest to which Insured Plaintiffs are entitled.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Insured Plaintiffs' Motion for Summary Judgment (Dkt. 56) be **GRANTED** in part and **DENIED** in part, and Liberty's Motion for Summary Judgment (Dkt. 69) be **GRANTED**.

In partially granting Insured Plaintiffs' Motion for Summary Judgment, the Court determines Insured Plaintiffs are entitled to summary judgment on their claim for TPPCA damages, attorney's fees, and prejudgment interest related to the AAA Arbitration and

20

Harris County Lawsuit. The specific damage amounts, if any, will be determined at trial or upon further summary judgment practice. Insured Plaintiffs' Motion for Summary Judgment is denied in all other respects.

In granting Liberty's Motion for Summary Judgement, the Court determines that the Fraud Exclusion forecloses Insured Plaintiffs' entitlement to any legal fees, costs, damages, and expenses related to the AAA Arbitration.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 27th day of November, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE