UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| COLUMBIA LLOYDS INSURANCE COMPANY, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 3:17-CV-005 |
| LIBERTY INSURANCE UNDERWRITERS, INC., | § § § | |
| Defendant. | § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Before the Court is Insured Plaintiffs' Motion for Summary Judgment ("Motion for Summary Judgment"). Dkt. 127. Having considered the motion, response, and applicable law, the Court **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

This insurance coverage suit between Plaintiffs Columbia Lloyds Insurance Company, MDOW Insurance Company, John Dunn and Milby Dunn, II (collectively, "Insured Plaintiffs") and Defendant Liberty Insurance Underwriters, Inc. ("Liberty") concerns the damages associated with Liberty's failure to defend two underlying matters: *John Dunn and Milby Dunn, II v. FarmAssure, LLC,* No. 2016-13393 (295th Dist. Ct., Harris County, Tex. Apr. 11, 2016). ("Harris County Lawsuit") and *FarmAssure, LLC v.*

*MDOW Insurance Company and Columbia Lloyds Insurance Company*, No. 01-16-00001-1237, American Arbitration Association ("AAA Arbitration").

This Court previously held "that Insured Plaintiffs [were] entitled to a defense by Liberty against all claims asserted against Insured Plaintiffs in the Harris County Lawsuit, and all claims asserted against Insured Plaintiffs in the AAA Arbitration[, and] . . . Liberty breached its contract with Insured Plaintiffs by wrongfully denying coverage under the Policy and refusing to provide a defense." *Columbia Lloyds Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2018 WL 1569718, at *11 (S.D. Tex. Mar. 14, 2018). Concerning damages, the Court found that "[t]he quantum of Insured Plaintiffs' recovery against Liberty for defense costs, fees and expenses" would be determined at a later date. *Id.* Later, the Court determined that: (1) as a result of the application of a policy exclusion (the "Fraud Exclusion"), Insured Plaintiffs were not "entitle[d] to any legal fees, costs, damages, and expenses related to the AAA Arbitration"; (2) Insured Plaintiffs were entitled to summary judgment on their Texas Prompt Payment of Claims Act ("TPPCA") claims; and (3) the specific damage amounts associated with the TPPCA claims would be resolved at a later date. Dkt. 120 at 20–21.

The dispute at issue in the Motion for Summary Judgment concerns the quantification of the three categories of damages left unresolved by the Court's previous rulings: (1) breach of contract damages stemming from the Harris County Lawsuit; (2) TPPCA damages stemming from the Harris County Lawsuit and AAA Arbitration; and (3) prejudgment interest stemming from the Harris County Lawsuit and AAA Arbitration.

The Court will discuss each category of damages in turn.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017) (internal quotation marks and citation omitted). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (internal quotation marks and citation omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotation marks and citations omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (internal quotation marks and citation omitted). "On cross-motions for summary judgment,

[the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (internal quotation marks and citation omitted).

### BREACH OF CONTRACT DAMAGES: HARRIS COUNTY LAWSUIT

As explained above, this Court previously determined that Liberty failed to uphold its duty to defend Insured Plaintiffs in the Harris County Lawsuit. At the time of the Court's ruling, Insured Plaintiffs were fully funding their own defense in the Harris County Lawsuit. After the Court's determination against Liberty, Liberty made partial payments totaling $108,041.82 towards the defense costs Insured Plaintiffs had incurred and paid. Despite this substantial partial payment, Insured Plaintiffs contend that Liberty remains liable for $42,906.94.[1] Based on this discrepancy, Insured Plaintiffs move to recover the outstanding balance. In support of their motion, Insured Plaintiffs have submitted invoices with some attendant itemized billing entries, along with the sworn declaration of attorney James E. Rogers. In his sworn declaration, Rogers attests to the facts surrounding the litigation work done in the Harris County Lawsuit, explains that all fees and costs incurred

---

[1] In the Motion for Summary Judgment, Insured Plaintiffs identified the outstanding balance as $44,160.44. *See* Dkt. 127 at 10. Insured Plaintiffs provided a chart explaining that the outstanding balance was calculated by taking the total amount of defense costs they paid ($202,202.22) and subtracting a deductible ($50,000.00), credit ($1,253.46) and the total of partial payments made by Liberty ($108,041.82). *See id.* The amounts included in Insured Plaintiffs' calculation are correct in that they match the amounts memorialized in the summary judgment evidence. However, when the Court did the calculation for itself, the remaining balance was not $44,160.44; it was $42,906.94. Thus, to the extent that the parties made arguments or concessions based on the $44,160.44 figure, the Court will apply them to the corrected outstanding balance figure.

4

were defense-related, and confirms that the fees and costs Insured Plaintiffs incurred and paid were both reasonable and necessary.

Although Insured Plaintiffs seek to recover $42,906.94, Liberty only challenges their recovery related to certain invoices totaling $36,359.69. In other words, Insured Plaintiffs' entitlement to $6,547.25 of the $42,906.94 outstanding balance is not in dispute—Liberty conceded as much at oral argument. Regarding the monies that are in dispute, Liberty makes three arguments. First, Liberty contests the reasonableness of a billing attorney's qualifications and hourly rate as reflected in Skadden, Arps, Slate, Meagher & Flom LLP's ("Skadden Arps") invoice no. 1703619 ($13,621.44). Second, Liberty challenges Skadden Arps's invoice no. 1689584 ($15,000.00), arguing the associated itemized billing entries are not attached to the invoice. And, lastly, Liberty contests whether the accounting services reflected in Matson, Driscoll & Damico LLP's ("Matson Driscoll") invoice no. 17201600204 ($7,738.25) relate to Insured Plaintiffs' defense in the Harris County Lawsuit, as opposed to their pursuit of affirmative claims. Importantly, Liberty has not presented any competing summary judgment evidence in support of its arguments.

"Texas law recognizes that attorneys' fees and expenses incurred by an insured in an underlying lawsuit are damages produced by the insurer's breach of its duty to defend." *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 453 (5th Cir. 2018) (internal quotation marks and citation omitted). *See also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 559–60 (5th Cir. 2004) ("A breach of the duty to defend entitles the insured to the expenses it incurred in defending the suit, including reasonable attorney's

fees and court costs.") (citations omitted). "It is well settled that once an insurer has breached its duty to defend, the insured is free to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his option." *Lyda Swinerton Builders, Inc.*, 903 F.3d at 454 (internal quotation marks omitted) (collecting cases). When this occurs, the breaching insurer "is in no position to object to defense-related expenditures that are supported by the record and that are not patently unreasonable." *Id.* Thus, a breaching insurer "may not directly challenge the reasonableness and necessity of [an insured's] attorney's fees"; however, they "may contest the admissibility or sufficiency of [the insureds'] evidence or make relevant legal argument as [the insured] undertake[s the] burden of proving . . . damages." *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 904 F. Supp. 2d 592, 604 (N.D. Tex. 2012). With this legal framework in mind, the Court turns to Liberty's arguments.

Liberty's first argument challenging the reasonableness of the billing entries reflected in Skadden Arps's invoice no. 1703619 ($13,621.44) falls flat. As explained in *Shore Chan*, as a breaching insurer, Liberty cannot directly challenge the reasonableness and necessity of Insured Plaintiffs' attorney's fees. *See id.* Insured Plaintiffs have submitted itemized billing entries detailing the work performed and memorialized in Skadden Arps's invoice no. 1703619, including the identity of the attorneys, their respective hourly rates, and the time expended on various tasks. In addition, Insured Plaintiffs also provided the declaration of James E. Rogers, who, after reviewing the itemized bills, opined that: "the amount of attorney's fees and costs reflected in . . . the Harris County Lawsuit . . . are reasonable and necessary for the work performed and costs

incurred in connection with the defense of the Harris County Lawsuit" and "that the hours expended, were reasonable and necessary for the proper representation of Insured Plaintiffs." Dkt. 127-1 at 5–6. In sum, the evidence submitted by Insured Plaintiffs to support invoice no. 1703619 is sufficient because it "includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012). *See also Venture v. UTSW DVA Healthcare, LLP*, --- S.W.3d ---, 2019 WL 1873428, at *20 (Tex. Apr. 26, 2019) ("We reaffirm today that the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services.") (citations omitted). Liberty blithely asserts the hourly rate charged by Skadden Arps is unreasonable but presents no competent summary judgment creating an issue of material fact. Thus, Insured Plaintiffs are entitled to summary judgment as to the $13,621.44 reflected in Skadden Arps's invoice no. 1703619.

Liberty's second argument avers that Skadden Arps's invoice no. 1689584 ($15,000.00) is insufficient to permit recovery on summary judgment because it contains no itemized billing entries. The Court agrees with Liberty. This invoice does not include any itemized billing entries—i.e., no attorney names, no time entries, no billing rates, and

no description of the work performed; rather, the invoice merely reflects that $15,000.00 is due "FOR PROFESSIONAL SERVICES rendered through September 30, 2017 with respect to the FarmAssure matter." Dkt. 57-2 at 307. Without such supporting documentation, the Court cannot grant summary judgment as to the requested $15,000.00. *See El Apple I, Ltd.*, 370 S.W.3d at 763 (remanding case after explaining that an attorney's affidavit supporting a fee application was deficient because he did not "present[] time records or other documentary evidence" and did not provide any "of the specificity needed for the trial court to make a meaningful [fee] determination").

Liberty's third argument is that the nature of the forensic accounting work underlying Matson Driscoll's invoice no. 17201600204 ($7,738.25) relates to Insured Plaintiffs' pursuit of affirmative claims. Insured Plaintiffs have submitted a sworn declaration attesting that the forensic accounting undertaken in the Harris County Lawsuit related to Insured Plaintiffs' defense. In the face of this summary judgment evidence, Liberty has offered only speculation and conjecture that the forensic accounting may really have related to Insured Plaintiffs' affirmative claim. Neither speculation nor conjecture is evidence. *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no writ) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004)) ("Speculation is not evidence."); *Drennan v. Cmty. Health Inv. Corp.*, 905 S.W.2d 811, 821 (Tex. App.—Amarillo 1995, writ denied) ("conjecture is not evidence"). Because Insured Plaintiffs' summary judgment evidence adequately supports its entitlement to relief and has not been controverted by competent summary judgment evidence, the Court finds that Insured Plaintiffs are entitled

to summary judgment as to the $7,738.25 reflected in Matson Driscoll's invoice no. 17201600204.

In sum, Insured Plaintiffs are entitled to $6,547.25 + $13,621.44 + $7,738.25 = $27,906.94 in breach of contract damages. The $15,000.00 reflected in Skadden Arps's invoice no. 1689584 is not recoverable at this time, however, because Insured Plaintiffs have failed to meet their summary judgment burden as to those funds.

## TPPCA DAMAGES

Insured Plaintiffs move to recover TPPCA damages flowing from Liberty's breach of its duty to defend the Harris County Lawsuit and AAA Arbitration. As explained by one court, "[i]t is under Section 542.060(a) [of the TPPCA] that 'the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages' if the insurer is liable for a claim under an insurance policy and fails to comply with the TPPCA." *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, No. H-07-2724, 2014 WL 109397, at *2 (S.D. Tex. Jan. 10, 2014) (quoting TEX. INS. CODE § 542.060(a)). Based on this provision, "Insured Plaintiffs [argue they] are entitled to [18 percent] penalty interest on the amounts incurred in the Harris County Lawsuit totaling $13,682.79 [from September 12, 2016, the date they paid their deductible to Liberty] through March 8, 2019[, the date the motion for summary judgment was filed], plus $21.78 per day thereafter on the current amount owed." Dkt. 131 at 17. With respect to the AAA Arbitration, Insured Plaintiffs contend they are entitled to 18 percent interest on each recoverable invoice from the date of payment through June 23, 2017 (the date the state

court entered a Final Judgment and Dismissal with Prejudice after receiving the arbitrator's Final Award), totaling $59,662.23 in TPPCA damages. Liberty disputes Insured Plaintiffs' entitlement to TPPCA damages related to both the Harris County Lawsuit and the AAA Arbitration. The Court discusses each proceeding and Liberty's arguments below.

## A.    HARRIS COUNTY LAWSUIT

In its response brief, Liberty does not contest Insured Plaintiffs' entitlement to TPPCA penalty interest in the Harris County Lawsuit. However, at oral argument, citing *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423 (Tex. 2004), Liberty argued that any TPPCA penalty interest should be calculated based on the amount of fees "still owed" at the time of this Court's damages determination, as opposed to the amount of fees owed at the time that Liberty breached its duty to defend. Specifically, Liberty contends that the statutory penalty should be applied only to the difference between the amount of Insured Plaintiffs' underlying claim (i.e., the total defense costs and fees Insured Plaintiffs' paid) and any partial payments it tendered prior to the instant recommendation. During the oral argument held on May 2, 2019, by way of hypothetical, the Court explored Liberty's position with the following inquiry:

> Defense costs, hypothetically incurred on day one, reasonable and necessary of a million dollars. And [Insured Plaintiffs] file a lawsuit. You don't pay. You don't pay. You don't pay. And just as the Court is about to sign the judgment, you pay $999,999.99—and that took five years. Your position is the only TPPCA damages [Insured Plaintiffs] get[] is on one penny?

Liberty, citing to *Mex-Tex*, agreed with the Court's hypothetical. Contrary to Liberty's argument, *Mex-Tex* does not stand for such an innovative proposition.

In *Mex-Tex*, the Texas Supreme Court considered "whether [a] commercial property insurer . . . breached its policy obligation to replace a damaged roof with one of 'like kind and quality', and if so, whether the insurer's tender of partial payment of the claim avoided, on that amount, the 18% per annum delay penalty imposed by article 21.55 of the Texas Insurance Code."[2] 150 S.W.3d at 424. The facts involved in *Mex-Tex* were quite simple. Mex-Tex, Inc's ("Mex-Tex") roof was damaged during a hailstorm in May 1999. *See id.* at 425. Mex-Tex immediately notified its insurer, Republic Underwriters, Inc. ("Republic"). *See id.* Republic investigated Mex-Tex's claim but disputed the amount of damage attributable to the hail. *See id.* While Republic was still investigating Mex-Tex's claim, it learned that Mex-Tex hired a contractor that replaced its roof for a total cost of $179,000. *See id.* Republic offered partial payment of $22,000, which Mex-Tex rejected. *See id.* at 426. On August 20, 1999, Republic sent Mex-Tex a check for $145,460. *See id.* The check was exchanged back and forth between Mex-Tex and Republic until Mex-Tex finally decided to keep the check as partial payment on October 12, 2000. *See id.* The trial court construed these facts and found that:

> Republic's failure to pay Mex–Tex the $179,000 was a breach of Republic's policy obligation to replace the roof with one of "like kind and quality"— despite the fact that Mex–Tex's cost exceeded the replacement cost of an identical roof by $33,540—and awarded Mex–Tex that difference in damages. The court also awarded Mex–Tex, under article 21.55, 18% per annum on $179,000 from November 4, 1999, *the date the court determined that Republic should have tendered that amount,* which was 75 days after it tendered $145,460, to the date Mex–Tex accepted that partial payment

---

[2] "Article 21.55 of the Texas Insurance Code . . . [is] the former enactment of the Texas Prompt Pay Act." *Hinojos v. State Farm Lloyds*, 569 S.W.3d 304, 312 (Tex. App.—El Paso 2019, pet. filed).

almost a year later, and thereafter on the $33,540 difference until judgment. The court of appeals affirmed.

*Id.* at 425 (emphasis added). The Texas Supreme Court ultimately disagreed with the trial court and court of appeals, holding that

> *from November 4, 1999,* 75 days after Republic tendered Mex–Tex partial payment of $145,460, to the date of judgment, Mex–Tex was entitled to the statutory penalty only on the $33,540 difference between the tendered payment and the amount of Mex–Tex's claim, determined by the trial court to be $179,000.

*Id.* at 427–28 (emphasis added).

As described above, the *Mex-Tex* court did not apply TPPCA penalty interest based on the amount of fees Republic still owed at the time of its damages determination—as argued by Liberty. Rather, the *Mex-Tex* court applied TPPCA penalty interest to the fees Republic still owed after the date the court determined that Republic should have paid all Mex-Tex's defense fees and costs.[3] The Court's interpretation of the holding of *Mex-Tex*

---

[3] This makes sense because under Texas law:

> when the insurer wrongfully rejects its defense obligation, the insured has suffered an actual loss that is quantified after the insured retains counsel and begins receiving statements for legal services. These statements or invoices are the last piece of information needed to put a value on the insured's loss. And when the insurer, who owes a defense to its insured, fails to pay within the statutory deadline, the insured matures its right to reasonable attorney's fees and the eighteen percent interest rate specified by the statute.

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007) (citations omitted). This means that TPPCA penalty interest is assessed against an insurer based on the dates an insured pays each bill for attorney's fees. *See Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F. Supp. 2d 844, 859 (N.D. Tex. 2008) ("The court concludes that *Lamar Homes* is best understood as holding that an insurer becomes liable under the statute when it wrongfully rejects its defense obligation, but that attorney's fees cannot be awarded, and . . . interest does not begin accruing, until the insured actually incurs the defense costs. To calculate these damages, the insured must provide evidence of the dates and amounts of its defense costs.").

is consistent with the analysis provided by an intermediate court of appeals applying the

holding of *Mex-Tex*:

> given the evidence in the record and the terms of the prompt-payment statute, United had until February 6, 2010 . . . in which to pay the full amount owed. Because the jury found that United instead left $300,000.00 unpaid, interest of 18% began accruing on that amount on February 6, 2010 and continued to accrue until the date of judgment.

*United Nat. Ins. Co. v. AMJ Invests., LLC*, 447 S.W.3d 1, 15 (Tex. App.—Houston [14th

Dist.] 2014, pet. dism'd) (citing *Mex-Tex*, 150 S.W.3d at 427–28).

In sum, *Mex-Tex* simply does not support Liberty's novel argument. Left without

this argument, Liberty has not otherwise challenged Insured Plaintiffs' calculation of

TPPCA penalty interest.

In the Motion for Summary Judgment, Insured Plaintiffs include supporting

evidence and explain their calculation of TPPCA penalty interest as follows:

> With respect to the Harris County Lawsuit, applying 18 percent interest on each recoverable invoice from the date of payment through March 8, 2019, results in a penalty interest award of $18,811.37. *See* Exhibits A & C to Rogers Declaration; Decl. of Marva Robinson, Exhibit A (summarizing the amount and date of each payment for MDOW's and Columbia Lloyds' underlying defense-related costs and expenses). Accounting for Liberty's partial payment reduces this amount by $5,128.58. *Id.* Accordingly, through March 8, 2019, Insured Plaintiffs are entitled to penalty interest for the Harris County Lawsuit in the amount of $13,682.79. *Id.* Penalty interest will continue to accrue in the amount of $21.78 per day on the current amount owed.

Dkt. 127 at 14. To be sure, Insured Plaintiffs' calculation of TPPCA interest complies with

Texas law. However, the monetary figures must be adjusted in two ways.

First, as explained above, the Court is not awarding the $15,000.00 reflected in

Skadden Arps's invoice no. 168958. Because the $15,000.00 remains in dispute, the Court

will not award TPPCA penalty interest on the $15,000.00 at this time. Thus, the $13,682.79 figure will be reduced by $3,535.89—i.e., the amount of TPPCA penalty interest attributable to the disputed $15,000.00. This results in a total of $10,146.90 in TPPCA penalty interest

Second, the per day interest rate must be adjusted. Insured Plaintiffs calculated the $21.78 per day interest rate by dividing 18 percent by 365 and multiplying that figure by the $44,160.44 outstanding balance. As described above, Insured Plaintiffs incorrectly calculated the outstanding balance in the Harris County Lawsuit, and the correct outstanding balance is $42,906.94. Accordingly, the Court must adjust the daily interest rate utilizing the corrected outstanding balance, less the disputed $15,000.00. Thus, the calculation of daily interest is as follows: 0.18 (18 percent interest) ÷ 365 (days) = 0.00049315 × $27,906.94= $13.76 (per day).

Accordingly, Insured Plaintiffs are entitled to 18 percent TPPCA penalty interest on the amounts incurred in the Harris County Lawsuit totaling $10,146.90 through March 8, 2019, plus $13.76 per day thereafter until final judgment.

## B.  AAA ARBITRATION

Insured Plaintiffs seek to recover TPPCA penalty interest on $888,946.36 in fees and costs they spent providing themselves a defense in the AAA Arbitration. In its response brief, Liberty does not contest nor dispute the reasonableness or necessity of the fees Insured Plaintiffs incurred defending the AAA Arbitration. In fact, at oral argument, Liberty conceded that it is in no way attempting to dispute the total amount of fees and costs that Insured Plaintiffs paid in the AAA Arbitration. Instead, Liberty disputes Insured

Plaintiffs' entitlement to TPPCA penalty interest based on the Court's Fraud Exclusion determination. Specifically, Liberty argues:

> Plaintiffs, however, are not entitled to any interest with respect to the Arbitration because the Arbitration is not even a "claim" under the TPPCA. The Texas Supreme Court has held that such a claim is limited ***to the amount ultimately determined to be owed[.]*** *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*,150 S.W.3d 423, 426 (Tex. 2004) (emphasis added). Since it is now judicially (and "ultimately") determined that Liberty owes Plaintiffs no "legal fees, costs, damages, and expenses" related to the Arbitration there is no amount "that must be paid" and the TPPCA is, in turn, foreclosed as to the Arbitration. Even still, if the Arbitration is deemed or was somehow a claim under the statute, the TPPCA offers no relief once it was determined that the Arbitration-related amounts "should not be paid by the insurer."

Dkt. 128 at 7.

Again, Liberty makes a creative argument. But, alas, to no avail. This Court has already determined that Liberty breached its duty to defend Insured Plaintiffs in the AAA Arbitration, and Liberty's breach constituted a violation of the TPPCA. These rulings did not disappear nor were they rendered moot by the Court's determination that the Fraud Exclusion applies in this case. As clearly detailed above, TPPCA penalty interest is applied to amounts that are still owed after the date the insurer should have tendered those amounts. There is no exception under the TPPCA based on a subsequent finding of a retroactive right to reimbursement of defense costs. Keeping in mind that the TPPCA "shall be liberally construed to promote the prompt payment of insurance claims," it only makes sense that an insurance company that fails to timely pay attorney's fees should face the TPPCA penalty. TEX. INS. CODE § 542.054. In duty to defend cases, such as here, TPPCA penalty interest is assessed against Liberty starting on the dates Insured Plaintiffs paid each bill for

attorney's fees. Liberty's attempt to attack the adequacy of Insured Plaintiffs' "claim" is really just another way of rearguing TPPCA liability. The Court declines to do so. Texas law is clear that "[d]efense costs incurred by an insured as a result of an insurer's breach of its duty to defend are a 'claim' within the meaning of the [TPPCA]." *Lyda Swinerton Builders, Inc.*, 903 F.3d at 450 (citing *Lamar Homes, Inc.*, 242 S.W.3d at 20). The Court finds no reason to run afoul of this well settled principle.

The only remaining dispute, then, concerns the scope of the TPPCA penalty interest. There is no question that TPPCA penalty interest starts on the date of payment of the underlying defense costs and ends when there was a "judgment of other final adjudication in the underlying action," triggering the Fraud Exclusion. Dkt. 120 at 6. The parties disagree, however, as to the date of the "judgment of other final adjudication in the underlying action." *Id.* Liberty contends that the interest should only be calculated through the date of the arbitrator's award—April 7, 2017. Insured Plaintiffs argue that the interest should be calculated through the date that the state district court entered its final judgment confirming the arbitrator's award and disposing of the previously abated case—June 23, 2017.

Under Texas law, an arbitrator's award is not considered final until confirmed by a court of competent jurisdiction.[4] *See Wilder Corp. of Delaware v. Rural Cmty. Ins. Servs.*,

---

[4] Liberty has offered authority standing for the proposition that an arbitrator's award is given the same effect as the judgment of a court of last resort. *See* Dkt. 128 at 11 n.5. Such authority goes towards describing the standard of review that courts must use when considering challenges to an arbitrator's award. It does not, however, convert an arbitration award into a trial court's final judgment.

494 F. App'x 487, 489 (5th Cir. 2012) ("The Texas state court had competent jurisdiction and rendered a final judgment on the merits when it confirmed the arbitration award."); *Thiessen v. Fid. Bank*, No. 02-17-00163-CV, 2017 WL 3428857, at *1 (Tex. App.—Fort Worth Aug. 10, 2017, no writ.) (citations omitted) ("Because this court's jurisdiction is limited to the review of final judgments and certain interlocutory orders *signed by the trial court*, the arbitrator's judgment is not directly appealable."). Given the state of Texas law, the Court finds that TPPCA penalty interest should run through June 23, 2017, the date of the judgment or other final adjudication that precipitated the Fraud Exclusion.

In the Motion for Summary Judgment and its supporting evidence, Insured Plaintiffs have calculated the TPPCA interest in compliance with Texas law. Accordingly, Insured Plaintiffs are entitled to 18 percent TPPCA penalty interest on the amounts incurred in the AAA Arbitration totaling $59,662.23.

## PREJUDGMENT INTEREST

"[P]rejudgment interest accrues as simple interest on the amount of a judgment, beginning on the earlier of the 180th day after written notice of the claim or the date suit is filed and ending on the day preceding the date judgment is rendered, at the prime rate or five percent a year if the prime rate is less than five percent." *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017).

Insured Plaintiffs seek prejudgment interest related to Liberty's breach of its duty to defend the Harris County Lawsuit, running from the date this suit was filed through final judgment at the rate of five percent per annum. Liberty does not contest Insured Plaintiffs' entitlement to this relief. The Court finds that Insured Plaintiffs are entitled to prejudgment

interest on the Harris County breach of contract claim, but the calculation of such interest is reserved until the Court's entry of final judgment. The Court notes, however, that at this time the prime interest rate is 5.5 percent, not five percent.[5] The Court should consult the resources identified in footnote five to determine the exact interest rate applicable at the time of judgment.

Insured Plaintiffs also seek prejudgment interest related to Liberty's failure to provide a defense in the AAA Arbitration, running from the filing of this suit on January 7, 2017, through the trial court's entry of final judgment on June 23, 2017 (the date the Fraud Exclusion kicked in, absolving Liberty of the need to reimburse defense costs).[6] Liberty makes two arguments challenging Insured Plaintiffs' entitlement to prejudgment interest. First, Liberty contends that due to the Court's Fraud Exclusion determination, Insured Plaintiffs are not entitled to the principal (paid defense costs and fees) upon which the prejudgment interest would be calculated, and, thus, any award of prejudgment interest will not accomplish the goal of providing "additional damages for the lost use of money due." *See* Dkt. 128 at 13 (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)). Next, Liberty argues that it is not appropriate to

---

[5] *See* TEX. FIN. CODE §§ 304.003(c), 304.103, 304.104; *Selected Interest Rates*, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, http://www.federalreserve.gov/releases/h15/ (release date May 21, 2019); *Interest Rates*, OFFICE OF CONSUMER CREDIT COMMISSIONER, https://occc.texas.gov/sites/default/files/uploads/credit-letters/04-23-19.pdf (last updated April 22, 2019).

[6] To be clear, Insured Plaintiffs do not seek prejudgment interest on the Court's award of TPPCA penalty interest.

award prejudgment interest in addition to TPPCA penalty interest. The Court is not persuaded by either of these arguments.

This Court has held that Liberty had a duty to defend Insured Plaintiffs in the AAA Arbitration and Liberty breached its duty. During the pendency of the AAA Arbitration, Insured Plaintiffs tied up a substantial sum of money providing itself the defense Liberty was obligated to provide. This plainly demonstrates a lost use of money, and the application of the Fraud Exclusion does not change this fact. Liberty's argument to the contrary is unconvincing. Moreover, Liberty is simply incorrect when it avers that the Court is prohibited from awarding prejudgment interest in addition to TPPCA penalty interest. There is not one case that supports Liberty's position, and the TPPCA expressly provides that it does not "prevent[] the award of prejudgment interest on the amount of the claim, as provided by law." TEX. INS. CODE § 542.060.

Accordingly, the Court finds that Insured Plaintiffs are entitled to prejudgment interest related to Liberty's failure to provide a defense in the AAA Arbitration at a rate of five percent per annum,[7] running from the filing of this suit on January 7, 2017, through the trial court's entry of final judgment on June 23, 2017, totaling $15,726.93.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that the Motion for Summary Judgment (Dkt. 127) be **GRANTED** in part and **DENIED** in part.

---

[7] In June 2017, when judgment was entered in the AAA Arbitration, the prime interest rate was five percent. *See* https://occc.texas.gov/sites/default/files/uploads/interest/accessible-judgement-rate-summary.19.pdf (accessed on May 22, 2019).

Specifically, the Court recommends the following rulings:

- Insured Plaintiffs are entitled to $6,547.25 + $13,621.44 + $7,738.25 = $27,906.94 in breach of contract damages. The $15,000.00 reflected in Skadden Arps's invoice no. 1689584 is not recoverable at this time.

- Insured Plaintiffs are entitled to 18 percent TPPCA penalty interest on the amounts incurred in the Harris County Lawsuit totaling $10,146.90 through March 8, 2019, plus $13.76 per day thereafter until final judgment.

- Insured Plaintiffs are entitled to 18 percent TPPCA penalty interest on the amounts incurred in the AAA Arbitration totaling $59,662.23.

- Insured Plaintiffs are entitled to prejudgment interest on the breach of contract claim relating to the Harris County Lawsuit, but the calculation of such interest is reserved until the Court's entry of final judgment.

- Insured Plaintiffs are entitled to prejudgment interest related to Liberty's failure to provide a defense in the AAA Arbitration at a rate of five percent per annum, running from the filing of this suit on January 7, 2017, through the trial court's entry of final judgment on June 23, 2017, totaling $15,726.93.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 30th day of May, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE